## NELSON D. ARMSTRONG *vs.* JORDAN S. ORLER.

Suffolk. October 9, 1914. — January 8, 1915.

Present: RUGG, C. J., LORING, DE COURCY, & CROSBY, JJ.

*Equity Pleading and Practice,* Appeal. *Frauds, Statute of. Election. Pledge. Contract,* Construction.

On an appeal from a final decree in a suit in equity entered in pursuance of findings of fact made by the judge who heard the case, if the evidence on which these findings were based is not a part of the record, the only question presented is whether on the findings of the judge the decree entered was a proper one.

Where an oral contract is made for the sale of certain shares of stock for a price of more than $50 and the seller agrees as a part of the contract of sale that, if at any time the buyer wishes to return the shares, the seller will buy them back from him at the same price, and under this contract the shares are delivered to the buyer and are accepted and received by him, that is a satisfaction of the statute of frauds as to the entire contract, and, in a suit in equity brought by the buyer to compel the seller to perform his agreement to take back the shares at the same price, the want of a memorandum in writing under R. L. c. 74, § 5, is no defence.

Where a contract was made for the sale of certain shares of stock with an agreement that, if at any time the buyer wished to return the shares, the seller would buy them back from him at the same price, in a suit in equity by the buyer to compel the seller to take back the shares at the original price, where it appeared that the plaintiff's demand upon the defendant to take back the shares was made about nine months after the making of the contract, it was *held,* that on the facts found by the trial judge the demand to take back the shares was made within a reasonable time.

Where a contract is made for the sale of certain shares of stock with the agreement that, if at any time the buyer wishes to return the shares, the seller will buy them back from him at the same price, a pledge of the shares by the buyer to the seller to secure a loan of money to the buyer is not an election by the buyer to keep the shares and not to insist on the seller's promise to buy them back, and the buyer may maintain a suit in equity to compel the seller to buy back the shares at the original price in order that he may apply so much of the proceeds as is necessary to the payment of the debt for which he has pledged the shares to the seller himself.

Where a contract is made for the sale of certain shares of stock with the unqualified agreement that, if at any time the buyer wishes to return the shares, the seller will buy them back from him at the same price, this does not mean merely that the buyer may return the shares if he is dissatisfied with the purchase, because the agreement to buy back the shares is absolute and the reason of the buyer for wishing to return them is immaterial.

LORING, J. This case comes before us on an appeal taken by the defendant from a final decree. The decree was entered pursuant to findings of fact made by the judge who heard the case in the Superior Court. The evidence on which these findings were made is not part of the record. The findings therefore are final, and the only question before us is whether on these findings the decree entered was proper.

The judge found that on April 7, 1913, the defendant sold the plaintiff fifty shares of the common stock of the Birmingham, Ensley and Bessemer Railroad Company, and later that he made another sale to the plaintiff which it is not necessary to state. He found that the defendant made the agreements that the plaintiff alleged were made by him as to both of these transactions. The plaintiff's testimony as to both of these transactions was this:

"All these purchases were made on oral agreements, made as a part of each contract of sale, that the defendant would buy back from the plaintiff these stocks and bonds at any time he (the plaintiff) desired to return the same, and pay the plaintiff therefor the amounts that he had paid to the defendant as the purchase prices therefor."

On June 19, 1913, there was another transaction between the plaintiff and the defendant which resulted in the defendant's delivering to the plaintiff ninety shares of the common stock of the Beacon Mortgage and Realty Company, and the plaintiff testified that he "received this stock with an agreement, made as a part of the transaction, in substance that the defendant would purchase said stock and take the same off his (the plaintiff's) hands for the amount he paid for it at any time the plaintiff so desired." The judge found that the defendant "did so agree."

On September 18, 1913, the plaintiff borrowed of the defendant $500 and pledged the fifty shares of the railroad stock as collateral. On October 14, 1913, the plaintiff borrowed of the defendant $2,500, on an agreement to pay for principal and interest $2,600 on January 1, 1914, and pledged with the defendant as security the ninety shares of the stock in the Beacon Mortgage and Realty Company. On December 31, 1913, the plaintiff, through his counsel, demanded payment of the purchase price of the railroad stock less the $500 and interest owed by him on the loan for which that stock was pledged as collateral and $2,000, being the difference between the purchase price of the Beacon Mortgage and Realty Company stock and the $2,500 borrowed on October 14, 1913. On the same December 31, 1913, the defendant demanded payment of the two notes of $500 and $2,500.

This bill was filed on January 1, 1914, to compel the defendant to take back the fifty shares of railroad stock and the ninety shares of Beacon Mortgage and Realty Company stock and pay the plaintiff the difference between the purchase price of these two sets of securities and the amounts due the defendant under the two loans mentioned above for which these securities had been pledged as collateral security. A decree to that effect was entered in favor of the plaintiff by the presiding judge, and it is from that decree that this appeal is taken.

1. The first objection made by the defendant is that his oral

agreement to take back the stock was a contract for the sale of goods, wares or merchandise within the statute of frauds, R. L. c. 74, § 5, and so not "good or valid." But it was found by the judge that this agreement to buy back these securities was a part of the original agreement of sale by which the defendant sold the securities to the plaintiff. The statute of frauds as to that agreement of sale (including the agreement to buy back the shares at any time the plaintiff desired) was satisfied by the delivery of the shares under this original agreement. That is settled. *Edgar* v. *Joseph Breck & Sons Corp.* 172 Mass. 581. *Hilliard* v. *Weeks,* 173 Mass. 304. *Corey* v. *Woodin,* 195 Mass. 464. *Schaefer* v. *Strieder,* 203 Mass. 467. Williston on Sales, § 73. In *Boardman* v. *Cutter,* 128 Mass. 388, relied on by the defendant, the agreement to buy the shares was not a term in a contract of sale where the statute of frauds was satisfied by a delivery of the shares sold under the original agreement of sales. The oral agreement to buy the shares in that case was a collateral, independent agreement made to induce the plaintiff to subscribe to stock in a corporation which was then in process of being formed.

2. The next objection taken by the defendant is that the plaintiff's demand upon the defendant to take back the stock was not made within a reasonable time. On the facts found by the judge we are of opinion that it was.

3. A further objection is that the plaintiff by pledging these stocks with the defendant had elected not to insist upon the defendant's agreement to buy them back if at any time the plaintiff so desired. Whether there would have been election if the plaintiff had pledged the stock with a third person need not be considered. We are of opinion that there was no election when he pledged the stocks with the defendant himself.

4. The defendant's last objection is that the plaintiff's option was to force the defendant to take back the stock if the plaintiff was dissatisfied with the purchase, and that on the facts it is evident that the reason for the plaintiff's insisting upon the defendant's taking back the stock was because he did not want to pay the note which became due on the day after his demand, namely, on January 1, 1914. But the agreement found by the judge to have been made by the defendant was not an agreement to take back upon the plaintiff's being dissatisfied with the purchase,

but was an absolute agreement that he "would buy back from the plaintiff these stocks and bonds at any time he (the plaintiff) desires to return the same."

The entry must be

*Decree affirmed with costs.*

*H. Williams, Jr.,* (*L. C. Bigelow* with him,) for the defendant Orler.

*W. H. Foster,* (*D. A. Pfromm* with him,) for the plaintiff.