MARIA EMERSON, Plaintiff, *v.* ASSOCIATED GAS AND ELECTRIC COMPANY, Defendant.

Supreme Court, Chemung County, August 7, 1933.

*Gardner & Moseson,* for the plaintiff.

*Mandeville, Waxman, Buck, Teeter & Harpending,* for the defendant.

PERSONIUS, J. The complaint alleges that the defendant sold the plaintiff eight debentures at par, or $800, and " promised and agreed to pay to the plaintiff the sum of $98.00 on each $100.00 certificate at any time that she demanded the payment," and further, " that thereafter the said plaintiff demanded the repayment from the defendant of the sum of $98.00 per $100.00 certificate and tendered the said certificates * * *; that said demand and payment has been refused by defendant."

In substance the complaint alleges that when the plaintiff purchased the debentures of the defendant, the defendant agreed, on request, to repurchase or take back the debentures and pay ninety-eight per cent of the purchase price therefor.

The complaint alleges the market value of the debentures at the time they were tendered back to the defendant and demands ninety-eight per cent of the purchase price less such market value. In other words, the plaintiff sues to recover, not the ninety-eight per cent of the purchase price which she alleges the defendant agreed to pay, but to recover damages, to wit, said amount less the market value.

The defendant argues that the alleged agreement, taken as a whole, is an agreement on the part of the defendant to sell debentures to the plaintiff with an option to the plaintiff to rescind the contract of sale, upon the exercise of which option the defendant would become obligated to pay the amount fixed and agreed upon in the contract, to wit, ninety-eight per cent of the purchase price. The defendant further argues that when said tender was made the title to the debentures revested in the defendant, became its property, and that, therefore, their market value is immaterial; that the plaintiff cannot recover *damages* fixed by the agreed return price less the market value, but can only recover the agreed return price.

In dollars and cents the measure of recovery means little. The real question is whether the title to the debentures, after they were tendered to the defendant, revested in the defendant or remained in the plaintiff. This might mean much.

We have held in a similar case that such an agreement is an *entire* contract. (See *Fitzpatrick* v. *Associated Gas & Electric Co.,* 148 Misc. 538, and cases there cited; also *Hilliard* v. *Weeks,* 173 Mass. 304; *Lumsden* v. *Davies,* 11 Ont. App. Rep. 585.)

This entire contract, however, contains two parts. The first

part is clearly a contract of sale, to wit, the sale by the defendant and the purchase by the plaintiff of the debentures. Damages in an action for non-acceptance by plaintiff would be governed by the Sales Act (Pers. Prop. Law, § 145, subd. 3).

Is the second part of this entire contract (to wit, the alleged agreement by the defendant to repurchase or retake the debentures on request, and to pay the plaintiff ninety-eight per cent of the purchase price) also a contract of sale, or is it merely an agreement for rescission of the first part? If it is an agreement to rescind — a " sale and return " agreement — is the plaintiff limited to the recovery of the amount agreed upon in the contract or may she recover damages, namely, the difference between that amount and the fair market value at the time of tender?

If the second part of this entire contract constitutes an agreement for a *resale* by this plaintiff to the defendant, then the plaintiff's right of recovery here is under subdivision 3 of section 145 of the Personal Property Law, and not for the agreed price under section 144. We have so held in *Sherman* v. *Associated Gas & Electric Co.* (not reported). We adhere to that decision. *But in that case it was assumed that the alleged agreement to retake the securities was an agreement of resale.* Both parties and the court assumed that it was such. The only question presented was whether a sale of the debentures (securities) came within the Sales Act. The plaintiff there argued that it did not and that he was entitled to recover the agreed price as at common law. (*Dustan* v. *McAndrews,* 44 N. Y. 72; *Glass & Co.* v. *Misroch,* 239 id. 475, 479.) We held that a sale of securities did come within the Sales Act and that there being an " available market for the goods," the measure of recovery was laid down by subdivision 3 of section 145 of the Personal Property Law. To the effect that a sale of securities comes within the Sales Act, see *Wills* v. *Investors Bankstocks Corporation* (257 N. Y. 451, 456, 457).

On this motion the defendant does not question that holding, but it questions the assumption on which that case was presented and decided, namely, the assumption that the alleged agreement to take back constituted an agreement of purchase and sale. It now says that it was merely an agreement to rescind at the option of the original purchaser, the plaintiff.

We have reached the conclusion that the second part of this entire contract is not a contract of purchase and sale. It is rather a provision giving the plaintiff an option to rescind the contract of sale contained in the first part. (*Johnson* v. *Trask,* 116 N. Y. 136, 141; *Laubach* v. *Laubach,* 73 Penn. St. 387, 392; *Dickinson* v. *Dickinson,* 29 Conn. 600; *Gay* v. *Dare,* 103 Cal. 454, 459.) The

first case not only held that such an agreement constituted an entire contract but that "The promise of the defendants that they would take the bonds off the plaintiff's hands at what they cost him, upon request, *is not a contract for the sale of goods, chattels or things in action*, within the third section of the Statute of Frauds, but *is a provision for the rescission of the entire contract* and is valid." In *Laubach* v. *Laubach* (73 Penn. St. 387) the court in discussing the measure of damage said (at p. 392): "But the mistake is in considering that this was a contract to purchase or repurchase. * * * It was an agreement by which, as one of the terms of the sale, the plaintiff was to be at liberty to rescind the contract."

Upon rescission a buyer becomes entitled to recover the amount paid, or the amount, if any, fixed by the contract to be recovered upon rescission. In *Laubach* v. *Laubach* (*supra*) the court said (at p. 392): "The plaintiff in error supposes that the same rule is applicable in this case as in the ordinary case of the refusal of a vendee, before any title to the property has passed to him, to accept goods which he had previously agreed to buy. The authorities which have been cited abundantly show that there the measure of damages is the difference between the contract and the market price at the time of the refusal or breach. But the mistake is in considering that this was a contract to purchase or repurchase. If the jury believed the testimony of the plaintiff, and that was left to them, and upon his credibility the whole controversy hinged, then it was an agreement by which, as one of the terms of the sale, the plaintiff was to be at liberty to rescind the contract, and the defendant undertook in that event to pay back the price or give his note for the amount. It is like the very common case of the purchase of a horse, where the buyer pays the price, but stipulates that after a reasonable trial, if he should not be satisfied with the animal he may return him and receive back the price paid. No one has ever supposed that this was to be construed as a contract to repurchase, or that upon the exercise by the vendee of the option reserved, the title does not revest in the original vendor, and the right to the price in the vendee. This is the legal effect of the rescission of a contract, whether the rescission be by reason of an inherent vice, such as fraud, or by virtue of the terms of the contract itself; *Smethurst* v. *Woolston*, 5 W. & S. 106."

Recovery of the purchase price, or of the amount fixed by the contract to be paid upon return of the goods, was allowed in *Johnson* v. *Trask* (116 N. Y. 136); *Giles* v. *Bradley* (2 Johns. Cas. 253); *Eno* v. *Woodworth* (4 N. Y. 249); *Wooster* v. *Sage* (67 id. 67, 72); *Thorndike* v. *Locke* (98 Mass. 340); *Armstrong* v. *Orler* (220 id. 112); *Gay* v. *Dare* (103 Cal. 454, 459), and *Vohland* v. *Gelhaar* (136 Wis.

75). It is significant that we have not found, nor has our attention been called, to any similar case where a purchaser who has rescinded or returned the goods, was allowed to recover the difference between the purchase price, or the agreed price upon return, and the market value of the goods.

Is not this entire contract one of " sale or return? " At least it is closely analogous. Such sales are recognized by the statute and common law. (Pers. Prop. Law, § 100, subd. 3; *Greacen* v. *Poehlman*, 191 N. Y. 493, 497; *Sturm* v. *Boker*, 150 U. S. 312, 328; *Ophir, etc., Co.* v. *Brynteson*, 143 Fed. 829, 833.)

Where goods are sold on " sale or return " or with the right in the purchaser to rescind, the title passes on delivery but the title is revested in the seller by their return or tender. 1 Williston on Sales (2d ed.), 548, says: " When a proper tender of the goods is made the seller cannot prevent the revesting of ownership in him by refusing to accept it. Irrespective of his acceptance, the property vests upon tender by the terms of the original bargain." (See, also, Vold Sales, p. 161; *Sutton* v. *Crosby*, 54 Barb. 80; *Gay* v. *Dare*, 103 Cal. 454, 459; *Levis* v. *Pope*, 202 N. Y. 402, 407; *Thompson* v. *Alger*, 12 Metc. 428, 443, 444; *Sawyer* v. *McIntyre*, 18 Vt. 27, 31.)

Where title has revested in the seller, the buyer should logically recover the purchase price or the amount named in the contract, if any. The title being in the seller, the value of the property becomes immaterial. So here, upon plaintiff's tender as alleged, the title to the debentures revested in the defendant. The plaintiff has possession as trustee but not title. Therefore, the allegations in reference to the market value are immaterial. She is not chargeable with or entitled to their value.

A contract must be enforced as written. If it names the recovery, that should control. The alleged contract here fixes the amount of the plaintiff's recovery at ninety-eight dollars per debenture. " It must be enforced in accordance with the terms of the contract." (*Vohland* v. *Gelhaar*, 136 Wis. 75, 78.)

It is immaterial that the amount agreed to be paid upon rescission differs from the purchase price. This was true in *Vohland* v. *Gelhaar* (136 Wis. 75); *Williams* v. *Burgess* (10 A. & E. 499 [Eng. Rep., full reprint, vol. 113, pp. 189, 190]); *Lumsden* v. *Davies* (11 Ont. App. Rep. 585) and *Dobson* v. *Parker* (20 S. W. [2d] 181).

Plaintiff cites cases brought by a vendor. They do not apply because the plaintiff here is not a vendor. She is merely a vendee who has exercised a right, given by the contract, to rescind. Therefore, sections 142 and 146 of the Personal Property Law do not apply.

Defendant's motion to dismiss the complaint is denied; an order may be entered striking out of paragraph 6 of the complaint as irrelevant and unnecessary the following language: " That at the time that the demand was made by the plaintiff from the defendant, the market value of said certificates was at the rate of $2.00 per $100.00; " and also paragraph 7 of the complaint, and directing that the complaint be deemed amended accordingly, and that the demand be increased from $768 to $784. The defendant may have ten days after the entry of an order herein, and service of a copy thereof, in which to answer or otherwise move to such amended complaint.

Submit order accordingly.